IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND *et al.*, | ) ) ) ) | No. 08 C 359 |
| Plaintiffs, | ) ) | Magistrate Judge |
| v. | ) ) | Maria Valdez |
| LONGSHORE/DALY, INC., | ) ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Rule 25(c) Motion to Substitute Multicon, LLC as a Party Defendant. [Doc. No. 45]. For the reasons that follow, Plaintiffs' Motion to Substitute is denied. Plaintiffs' request in the alternative for limited discovery on the issue of successorship is granted.

## BACKGROUND

On January 16, 2008, Plaintiffs, Trustees of the Chicago Regional Council of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Welfare Fund, and the Chicago Regional Council of Carpenters Apprentice and Trainee Program Fund (collectively "the Funds") sued Defendant, Longshore/Daly, Inc. ("Longshore"), to recover delinquent contributions owed under a collective bargaining agreement. The Funds won a judgment against Longshore in the amount of $181,518.99 on May 13, 2009.

Longshore subsequently paid only a portion of the owed amount, leaving $127,389.80 of the debt, plus accrued interest, unsatisfied. On November 19, 2013, the Funds filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 25(c) seeking to substitute Multicon as a party defendant liable for the unpaid balance of the judgment against Longshore. The Funds base their motion on a theory of successor liability. In the alternative, the Funds request to engage in limited discovery on the question of successorship.

## DISCUSSION

### I. LEGAL STANDARD

Rule 25(c) is a procedural mechanism that allows a party to be substituted for another where an interest has been transferred. *Sullivan v. Running Waters Irrigation, Inc.* 739 F.3d 354, 358 (7th Cir. 2014). While the transfer of obligations using this mechanism has traditionally been limited in scope, the Seventh Circuit has expanded its application in ERISA cases to recover unpaid benefit fund contributions, using modified federal common law standards to establish successor liability. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327–29 (7th Cir. 1990). Substitution of parties under Rule 25(c) is in the court's discretion. *ISI Int'l v. Borden Ladner Gervais, LLP*, No. 98 C 7614, 2002 WL 230904, at *1 (N.D. Ill. Feb. 15, 2002), *aff'd*, 316 F.3d 731 (7th Cir. 2003).

In ERISA cases, successor liability applies when two conditions are met: (1) the successor had notice of the liability in question before an interest was transferred; and (2) there is substantial continuity of business operations between

the predecessor and the successor. *Sullivan*, 739 F.3d at 357; *Chi. Reg'l Council of Carpenters Pension Fund v. Estate Installations, Inc.*, No. 11 C 2924, 2013 WL 500833, at *2 (N.D. Ill. Feb. 8, 2013). While successor liability traditionally only applied to companies selling assets, the doctrine has been expanded to include "any reorganization that results in a substantial continuation of the business by the successor and either obliterates the previous business or leaves it as an empty shell." *Trs. of Chi. Reg'l Council of Carpenters Pension Fund v. Conforti Const. Co., Inc.*, No. 09 C 322, 2013 WL 3771415, at *2 (N.D. Ill. July 17, 2013) (quoting *Cent. States, S.E. & S.W. Areas Pension Fund v. TAS Inv. Co. LLC*, No. 11 C 2991, 2013 WL 1222042, at *7 (N.D. Ill. Mar. 25, 2013)) (internal quotes omitted).

## II. ANALYSIS

### A. Notice of Liability

Multicon's prior notice of Longshore's liability is undisputed. As a result, the Court's inquiry is limited to whether there is "substantial continuity" of business operations between Longshore and Multicon.

### B. Substantial Continuity

Whether there is sufficient continuity between two entities to establish successor liability is a fact-based question which requires courts to consider the totality of the circumstances. *Sullivan*, 739 F.3d at 358; *Laborers' Pension Fund v. Seacrest Servs., Inc.*, No. 12 C 9103, 2014 WL 274100, at *2 (N.D. Ill. Jan. 24, 2014).

Factors a court should consider in making this determination include: whether the successor employs "substantially all" of the predecessor's workforce, including supervisors and vice presidents; its use of a predecessor's plant and equipment to produce the same product; its completion of the predecessor's work orders; and its agreement to honor the predecessor's warranties. *Artistic Furniture*, 920 F.2d at 1329. Courts have also considered whether the business of both employers is the same, whether the employees of the successor are doing the same jobs under the same supervisors, and whether the successor has the same production process and the same customer base as the predecessor. *See Estate Installations*, 2013 WL 500833, at *2.

The Funds claim that six attributes of Multicon's business signal substantial continuity stemming from Longshore: (1) shared customers; (2) a common telephone number; (3) a common address; (4) performance of the same type of construction work; (5) shared employees Glenn Longshore and Rick Koslica; and (6) continuity of business operations as indicated by a shared registered agent, Thomas Moore. The Court will assess the weight of each of these claims in addition to other factors commonly examined by courts in this district.

As an initial matter, a typical foundation for successor liability — transfer of assets from the predecessor to the successor — is absent here. *See TAS Inv.*, 2013 WL 1222042, at *7 ("The basic theory of successor liability allows lawsuits against even genuinely distinct purchasers of business assets if [the *Artistic Furniture* test is satisfied]."). The Funds do not assert that Multicon purchased any equipment or

4

other assets from Longshore, nor do they assert that Multicon uses Longshore's equipment at its business. Standing alone, the lack of an asset transfer from Longshore to Multicon does not end the inquiry. *See Sullivan*, 739 F.3d at 357 (noting that *Artistic Furniture* "does not require a formal purchase of assets to establish successor liability"). However, the dearth of business assets that passed between the two companies weighs against a finding of continuity.

It is undisputed that there is ownership overlap between Longshore and Multicon. Kevin Daly incorporated Longshore in partnership with John Longshore in 2008. Daly also served as Longshore's Secretary. However, Daly's position at both companies does not establish continuity. *See e.g. Conforti Constr.*, 2013 WL 3771415, at *3 (holding that employment and shareholder status at earlier business alleged successor did not establish continuity); *Estate Installations,* 2013 WL 500833, at *3 (finding no continuity where window company supervisor started his own company without assets from his former employer and stating that even if ownership at both companies were assumed "this alone is insufficient to establish continuity").

Multicon does not dispute the Funds' claim that it uses the same phone number and business address as Longshore, explaining that "both Multicon and Longshore sometimes use Kevin Daly's home telephone number and residential address." (Def.'s Resp. at 6.) This also falls short of establishing continuity, as it is reasonable that Daly could run two distinct businesses from a home office. *See Chi.*

5

*Dist. Council of Carpenters Pension Fund v. A.F. McCarthy, Inc.*, No. 94 C 6881, 1996 WL 563459, at *4 (N.D. Ill. Sept. 30, 1996) (finding no substantial continuity between two corporations despite both being run from the same office because "that fact alone is innocuous; many small businesses are run out of the owner's home").

The importance of Daly's role in Longshore and Multicon is further complicated because Multicon was established as a sole proprietorship in 1991, eight years before Longshore was incorporated.[1] While Multicon was later incorporated as a limited liability company in 2011, it has been engaged in work as a general contractor since its inception as a sole proprietorship. Multicon's continuous operation preceding Longshore's incorporation, without any transfer of assets between the companies as a result of the judgment against Longshore, casts doubt on the idea that Multicon can be considered Longshore's successor.

---

[1] The Funds' Reply argues that the Court should strike the affidavits of Kevin Daly and Josh Boller, which were submitted in support of Multicon's response, because they are undated and lack attestations required by 28 U.S.C. § 1746. It appears that counsel for Multicon submitted two supporting documents, the "affidavits" of Kevin Daly and Josh Boller based on Illinois state law requirements. (*See* Daly Aff. 1("Under penalty of perjury as provided in § 1–109 of the Illinois Code of Civil Procedure, the undersigned certifies. . . .").) Because the sworn statements of Daly and Boller were not notarized, they are actually unsworn declarations as defined by 28 U.S.C. § 1746. However, the statements were certified "under the penalty of perjury" and because the date of the signatures can be approximated based on the content and filing dates of the declarations, the Court will consider them. *See E.E.O.C. v. World's Finest Chocolate, Inc.,* 701 F. Supp. 637, 639 (N.D. Ill. 1988) ("[28 U.S.C. § 1746] requires verification in *substantially* the prescribed form. The crucial aspect of the form provided in the statute is that the person write his or her signature under penalty of perjury.") (emphasis in original); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002) ("[C]ourts have held that the absence of a date on [unsworn declarations] does not render them invalid if extrinsic evidence could demonstrate the period when the document was signed.")

Aside from Multicon's 2011 incorporation as a limited liability company, which could have happened for a variety of reasons, no reorganization for the purposes of escaping liability appears to have taken place.[2]

The Funds also claim that substantial continuity is supported by three shared customers between the two businesses. Customer sheets submitted by Multicon indicate that, out of 38 total Multicon customers since 1991 and 52 Longshore customers since 2003, only Boller Construction, Bradnic Builders, and Martin Peterson Co. overlap. Showing that a new company "basically has the same body of customers" as its alleged successor may weigh in favor of substantial continuity. *Estate Installations*, 2013 WL 500833, at *2. Here, however, the companies share only a small fraction of their customers; this fact does not support a finding of substantial continuity.

The Funds next argue that Longshore and Multicon both engage in general carpentry, with Multicon taking on new business that would have otherwise been done by Longshore. Multicon responds that Longshore was a subcontractor, which specifically installed metal studs and drywall, while Multicon is a general contractor that supervises entire construction projects. Longshore's narrow scope of

---

[2] The Funds' submission of an audit allegedly showing Boller Construction's payments shifting from Longshore to Multicon because the lawsuit was filed on January 16, 2008 similarly fails to reveal a reorganization. While the audit does show payments made by Boller to Longshore stopped on August 8, 2009 and regular payments have been made to Multicon since June 9, 2008, the audit has no information regarding payments made prior to October, 2007. Thus, the audit does not conclusively show that Boller shifted payments as a result of the lawsuit. It seems equally plausible that payments to Multicon were a continuation of a business relationship that began during Multicon's time as a sole proprietorship, prior to the earliest date on the pay record.

business is supported by a union employer questionnaire, attached to John Libby's declaration, which states that Longshore's primary function is "[d]rywall/[m]etal studs/[i]nsulation." (Libby Decl. Ex. B, at 4.) The Funds have not shown that Multicon's work as a general contractor means that both companies are engaging in the same business. Multicon's work as a general contractor is broader in scope than Longshore's, which is limited to one component of construction projects. Although the nature of their businesses results in both Longshore and Multicon interacting with carpenters, this commonality is insufficient to establish continuity. *See Estate Installations,* 2013 WL 500833, at *3 (concluding that two companies performing some similar work in window installation was not sufficient evidence of substantial continuity because the later business had "since begun other construction work that [the alleged predecessor] never performed").

Furthermore, despite the Funds' arguments to the contrary, these facts are distinguishable from *Sullivan*, where the successor company sought to differentiate itself from its predecessor by claiming the later company "consulted" on irrigation projects, but did not service or install them. *Sullivan*, 739 F.3d at 358. The Seventh Circuit found the defendant's distinction in that case "wholly artificial, highlighted by the fact that almost every one of RWI's customers is a former customer of Alpine and receives similar services." *Id*. As noted above, the significant variations between the customer bases of Longshore and Multicon suggest the absence of business continuity. The Funds also have not specified what work, if any, Multicon has taken on in Longshore's stead, leaving only speculative questions about the

8

kinds of work Multicon may be engaged in. The Court is not persuaded that Longshore and Multicon conduct sufficiently similar business to establish continuity.

The Funds argue that Longshore and Multicon share common employees. In support, they offer the declaration of John Libby, an Audits and Collections Manager for the Funds, stating that Glenn Longshore, John Longshore, and Rick Koslica were employed by Longshore between 2007 and 2008. The Funds also rely on the declaration of James Rosemeyer, a union organizer, which states that he observed those three employees at a union job site, the Glen Flora School. Rosemeyer reports that he observed Glenn Longshore and Rick Koslica installing an acoustical ceiling and on June 8, 2013, Koslica told Rosemeyer that they were working for Multicon. Rosemeyer attached a "blue card" from the same day to his declaration, reporting that non-union workers were on a union job site. Multicon responds that while they estimated, bid, and supervised the Glen Flora project, Boller Construction was responsible for employing and paying the workers who installed the acoustical ceilings. Multicon also offers paystubs from Boller for each of the employees identified by Rosemeyer.

The disputed evidence does not conclusively establish which, if any, of the three employees in question worked for Longshore and for Multicon. Pay records from Boller for Glenn and John Longshore for a pay period ending on June 8, 2013,

suggest that they were employed by Boller.[3] More importantly, evidence that one, possibly three, employees are shared between Longshore and Multicon is not sufficient for a showing of substantial continuity where courts typically seek evidence that a successor employs "substantially all" of a predecessor's workforce. *Artistic Furniture* 920 F.2d at 1329; *see also Sullivan,* 739 F.3d at 356 (finding substantial continuity where new company had hired "five out of six" of prior company's employees.) The Court has no indication of how many carpenters Multicon has employed, and therefore cannot establish that the majority of Multicon's workforce is made up of former Longshore employees. *See A.F. McCarthy*, 1996 WL 563459, at *4 ("These numbers are necessary to determine whether the continuity among employees is significant or not; the existence of five people (including the owner's son) who worked for both companies means nothing absent some kind of context.") The Funds' disputed evidence of a handful of common workers is not sufficient to show continuity.

Finally, the Funds argue that Longshore and Multicon share the same registered agent, Thomas Moore, suggesting continuity between the businesses. It stands to reason that an owner of two distinct businesses would employ the same attorney for both. Stronger indicia of continuity in the form of a common wage and fringe benefit bond shared by two companies has been rejected as insufficient

---

[3] The pay record for Koslica is dated for the pay period ending July 13, 2013, and is therefore not probative as to who he was working for at the time of his confrontation with Rosemeyer.

evidence of continuity. *See Conforti Constr.,* 2013 WL 3771415, at *4 (limiting the bond's weight due to a finding of conflicting evidence but stating that even if it was assumed that the companies shared the bond, it "in any event would not overcome the evidence that shows a lack of continuity"). Considered alongside the other evidence in the case, a common agent, without more, does not amount to substantial continuity of business operations.

    C.    **Additional Discovery**

The Funds seek alternative relief in the form of limited discovery on the issue of successorship between Multicon and Longshore. The Funds have already conducted audits of Boller and Longshore. The evidence from these audits do not suggest substantial continuity of business operations. However, because the substitution analysis must employ a number of factors in "myriad factual circumstances and legal contexts" — all of which concern facts in Defendants' possession — discovery should be allowed. *See Chicago Truck Drivers Pension Fund v. Tameskin*, 59 F.3d 48, 49 (7th Cir. 1995). The Funds' request for additional information as to the type of work done by Multicon prior to its incorporation as a limited liability company, the nature of the work done by Longshore and Multicon prior to the lawsuit, the names of Multicon's employees, and reasons why the companies share Boller Construction as a client is of a limited and specific nature and will be granted. The Court cautions the Funds that such discovery will be circumscribed to what has been requested with a limited temporal scope of two years.

## CONCLUSION

For the reasons stated above, Plaintiffs' Rule 25(c) Motion to Substitute Multicon, LLC as a Party Defendant [Doc. No. 45] is denied. Plaintiffs' request in the alternative for limited discovery on the issue of successorship are granted.

**SO ORDERED.**                               **ENTERED:**

**DATE:**    **February 25, 2014**

**HON. MARIA VALDEZ**

**United States Magistrate Judge**